UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JAVIER DE JESUS AGUILAR, | |
| Petitioner, | |
| v. | CAUSE NO. 3:25-CV-898 DRL-SJF |
| BRIAN ENGLISH, SAM OLSON, TODD LYONS, KRISTI NOEM, PAMELA BONDI, and JOSEPH B. EDLOW, | |
| Respondents. | |

## OPINION AND ORDER

Petitioner Javier de Jesús Aguilar, a Mexican citizen, is being detained at Miami Correctional Facility under United States Immigration and Customs Enforcement (ICE) authority. He petitioned for a writ of habeas corpus under 28 U.S.C. § 2241, alleging he is being detained in violation of the laws and Constitution of the United States. At issue is the government's authority to detain a noncitizen while his removal proceedings pend.

The court directed the governmental parties identified as respondents (all representatives of the federal government save for the Miami Correctional Facility's warden) to show cause why a writ of habeas corpus should not be granted. Though the proper respondent in a habeas claim may be the immediate custodian, *see Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004), the federal government has filed a collective response. Mr. De Jesús Aguilar filed a reply. For the following reasons, the court will grant the petition for a writ of habeas corpus under § 2241.

FACTS

Mr. De Jesús Aguilar is a citizen of Mexico who has been present in the United States without authorization since 2006. According to immigration records, he was arrested by the United States Border Patrol on October 26, 2006, and voluntarily removed to Mexico. The exact date of his subsequent reentry is unknown. He again encountered immigration officials on October 30, 2013, when he was arrested by ICE and served with a notice to appear.[1] The notice charged him with removability under § 212(a)(6)(A)(i) of the Immigration and Nationality Act (INA)—that is, being inadmissible because he was "present in the United States without being admitted or paroled, or . . . arrive[d] in the United States at any time or place other than as designated by the Attorney General." 8 U.S.C. § 1182(a)(6)(A)(i). Mr. De Jesús Aguilar was released on a $5,000 bond that same day.

Years passed. A family developed. On April 3, 2024, Mr. De Jesús Aguilar was charged in state court with several crimes. *See State v. De Jesús Aguilar*, No. 49D07-2404-F3-009320 (Marion Super. Ct. decided Apr. 17, 2025). He was released from state custody on bond on April 9, 2024, and taken into ICE custody. He was released from ICE custody on a $7,500 bond on May 10, 2024.

Mr. De Jesús Aguilar's state criminal proceedings concluded on April 17, 2025, when he was sentenced to 365 days in prison on a level 5 felony for criminal confinement where a

---

[1] There is an apparent discrepancy in the record about the date Mr. De Jesús Aguilar was arrested by Indianapolis ICE. According to the summary of events within the Record of Deportable/Inadmissible Alien, he was arrested on October 26, 2006, and served with a notice to appear. However, the actual notice to appear is dated October 30, 2013. The court assumes the 2013 date is correct.

2

vehicle was used and to 365 days on a class A misdemeanor for domestic battery, with the sentences to run concurrently.

On October 2, 2025, ICE processed Mr. De Jesús Aguilar as a "back-in custody," cancelled his $7,500 bond, and notified its legal department to re-calendar immigration proceedings. He is currently being detained at Miami Correctional Facility under the custody of the Department of Homeland Security (DHS). He claims that his detention violates 8 U.S.C. § 1226(a), because no warrant for his arrest was issued and because this statute would provide for discretionary bond or release on recognizance. He adds that he is being unlawfully detained under 8 U.S.C. § 1225(b)(2) too, which does not allow for bond. The government asserts that he is validly detained under § 1225(b)(2) as an "applicant for admission" while his removal proceedings pend.

## DISCUSSION

A.  *Subject Matter Jurisdiction*.

The government says certain INA provisions strip the court of jurisdiction over this habeas petition. The court likewise has an independent duty to ensure its subject matter jurisdiction. *See Page v. Democratic Nat'l Comm.*, 2 F.4th 630, 634 (7th Cir. 2021).

1.  *8 U.S.C. § 1252(e)(3)*.

The government first argues that the court lacks subject matter jurisdiction because § 1252(e)(3), entitled "[c]hallenges on validity of the system," provides that "[j]udicial review of determinations under section 1225(b) of this title and its implementation" must be filed in the District of Columbia, with determinations then limited to the following:

> (i) whether such section, or any regulation issued to implement such section, is constitutional; or (ii) whether such a regulation, or a written policy directive, written policy guideline, or written procedure issued by or under the authority of the Attorney General to implement such section, is not consistent with applicable provisions of this subchapter or is otherwise in violation of law.

8 U.S.C. § 1252(e)(3)(A).

The government says Mr. De Jesús Aguilar challenges DHS's determination that all aliens who entered the United States without inspection are subject to mandatory detention under § 1225(b)(2). The government contends that this amounts to judicial review of a written policy or guideline implementing § 1225(b), which falls under § 1252(e)(3)(A)(ii) and must be brought in the District of Columbia. In response, Mr. De Jesús Aguilar argues that § 1252(e)(3) applies only to facial or systemic challenges to the constitutionality or legality of the expedited removal system or its implementing regulations, not to foreclose individualized habeas petitions challenging whether a particular petitioner fits the statutory criteria to be detained under § 1225(b).

The court also concludes that § 1252(e)(3) does not apply here or divest jurisdiction. By its plain language, § 1252(e)(3) concerns § 1225(b) determinations, including orders of removal, referrals for asylum, and referrals for proceedings that concern applicants for admission, including the implementation of the expedited removal provisions found there, as adopted by Congress in 1996 when it enacted the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA). Notwithstanding the title that might inform an ambiguity (not present here), *see City & Cnty. of San Francisco v. Env't Prot. Agency*, 604 U.S. 334, 345 (2025); *Dubin v. United States*, 599 U.S. 110, 120-21 (2023), Congress knew how to

4

limit § 1252(e)(3) if in fact it wanted this statute to cover only § 1225(b)(1) decisions and not also those under § 1225(b)(2), and Congress plainly did not do so. *Compare* 8 U.S.C. § 1252(e)(1)(A), (e)(2), *with* 8 U.S.C. § 1252(e)(3)(A).

From there, the government reasons that Mr. De Jesús Aguilar seeks judicial review of a written policy or guideline that implements § 1225(b), thereby barring review here and permitting review only in the District of Columbia. Mr. De Jesús Aguilar at one point perhaps overcomplicates his petition by alluding to a "reinterpretation" of § 1225(b)(2) through an internal ICE memorandum and the consequent "policy shift" that, he claims, contradicts the statute and decades of agency interpretation and binding precedent. He alleges that his detention without bond "stems from a controversial policy shift by ICE in July 2025," which aligns with a recent decision from the Board of Immigration Appeals (BIA). *See In re Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025).

But, at the end of the day, his petition eludes all the trappings that would bar review. For one, whether someone falls within the category of "applicant for admission" under § 1225(b)(2) or an alien arrested or detained in the United States interior pending a removal decision under § 1226(a) is precisely a question of law designed for the court, and not seemingly barred by any provision offered by the government today. *See Demore v. Kim*, 538 U.S. 510, 517 (2003) ("Where Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear. And, where a provision precluding review is claimed to bar habeas review, the [law requires] a particularly clear statement that such is Congress' intent.") (citation modified).

5

For another, no matter the reference to this new internal ICE memorandum in his petition, Mr. De Jesús Aguilar in his prayer for relief seeks to resolve the statutory question about his detention, not ultimately to have the court decide whether this memorandum reflects an inconsistent or illegal application of Title 8 (at most, the question reserved for the District of Columbia). For yet another and related reason, the government has not established that this internal memorandum even constitutes a written policy directive, guideline, or procedure issued by the Attorney General to implement § 1225(b)—a prerequisite to divesting the court of jurisdiction—unpublished as the internal memorandum is and offered today merely as a leaked screenshot. Nor is the BIA decision such a written policy because it lacks the authority "to promulgate rules or policies other than for its internal operations." *Ren v. Gonzales*, 440 F.3d 446, 448 (7th Cir. 2006).

And last, if § 1252(e)(3) channeled all as-applied challenges to a question of § 1225(b)(2) versus § 1226(a) detention to the District of Columbia, this section would conflict with the recent directive that challenges by detained individuals that "necessarily imply the invalidity of their confinement" "must be brought in habeas" within the district of confinement. *Trump v. J.G.G.*, 604 U.S. 670, 672 (2025) (decision under the Alien Enemies Act); *id.* at 672-73 ("Although judicial review under the AEA is limited, we have held that an individual subject to detention and removal under that statute is entitled to judicial review as to questions of interpretation and constitutionality of the Act as well as whether he or she is in fact an alien enemy fourteen years of age or older.") (quotations omitted); *see also Rumsfeld*, 542 U.S. at 443; *Ludecke v. Watkins*, 335 U.S. 160, 163–64 (1948). Even a statute limiting judicial review to questions of interpretation and constitutionally does not prevent

6

a habeas corpus petition challenging whether a petitioner does, in fact, fall within the statute of concern. This threshold classification does not come within the scope of § 1252(e)(3)'s limitation, for this judicial question isn't a "determination[] *under* section 1225(b) and its implementation." It is a determination whether an alien, so defined in the INA, even falls within that section.

In short, Mr. De Jesús Aguilar isn't so much challenging any written policy or guidance as he is presenting an individualized challenge to his detention—namely whether he has been classified properly as an "applicant for admission" under § 1225(b)(2) and subject to mandatory detention without a bond hearing, or alternatively whether he must receive a bond hearing under § 1226(a) as a long-term resident apprehended in the interior. The relief to be granted concerns neither certain barred decisions related to the removal system nor its implementing regulations or agency policies, just his particular relief from detention. Nowhere in § 1252(e)(3) is there evidence of congressional intent to provide immigration authorities unreviewable discretion to decide which noncitizens are subject to § 1225(b)(2) and which are subject to § 1226(a). The court retains jurisdiction.

    2. *8 U.S.C. § 1252(g)*.

The government next argues that § 1252(g) bars review of Mr. De Jesús Aguilar's habeas petition. This section says "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252. The government contends that commencing removal

proceedings encompasses—arises from—the decision to detain a noncitizen while removal proceedings occur.

The government's position reads as though the statute were written differently—not just that the habeas petition "arises from" the Attorney General's decision but also "relates to" it—a much broader phrase, indeed one of the broadest, and one omitted by Congress. And the petition for the court's habeas review isn't because the government *commenced* proceedings, *adjudicated* a case, or *executed* a removal order, but because the government detained a nonresident alien without a bond hearing and classified him under § 1225(b)(2) rather than § 1226(a) while the rest of that might occur. *See Jennings v. Rodriguez*, 583 U.S. 281, 293-94 (2018) (rejecting "uncritical literalism" and the idea that § 1252(g) "sweep[s] in any claim that can technically be said to 'arise from' the three listed actions" and instead finding that "the language [] refer[s] to just those three specific actions themselves"). The court will not add to the statute what isn't there. *See Demore*, 538 U.S. at 517. The court's job is to enforce the statute's plain language, not to legislate through interpretation.

As good company, our circuit has not read § 1252(g) as broadly as the government invites. In *Parra v. Perryman*, 172 F.3d 954, 957 (7th Cir. 1999), the court of appeals concluded that § 1252(g) does not bar a noncitizen's § 2241 petition challenging his mandatory detention under 8 U.S.C. § 1226(c) while removal proceedings occur because the petitioner was not asking the district court "to block a decision to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." *See also Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482-86 (1999). Instead, the petitioner in *Parra* concerned "detention while the administrative process lasts" such that "it may be resolved

8

without affecting pending proceedings." *Parra*, 172 F.3d at 957. Although *Parra* dealt with the mandatory detention scheme in § 1226(c) rather than this debate between § 1225(b)(2) and § 1226(a), the rationale applies with equal force under the law. Section 1252(g) thus does not strip this court of jurisdiction over this § 2241 petition.

        3. *8 U.S.C. § 1252(b)(9).*

The government last argues § 1252(b)(9) as a jurisdictional bar to Mr. De Jesús Aguilar's habeas corpus petition. This statute says "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section." 8 U.S.C. § 1252(b)(9). This acts as a "zipper clause," funneling a noncitizen's claims about his removal to one court at the end of the removal proceedings. *See Am.-Arab Anti-Discrimination Comm.*, 525 U.S. at 483. The government contends that, working together with § 1252(a)(5), § 1252(b)(9) channels the review of all claims arising from deportation proceedings to a court of appeals in the first instance.

The government's position that § 1252(b)(9) requires Mr. De Jesús Aguilar to wait until there is a final order before challenging his detention contradicts the plurality decision in *Jennings*, 583 U.S. at 292, which concluded that § 1252(b)(9) did not prevent the court from deciding questions of law concerning whether "certain statutory provisions [in the INA] require detention without a bond hearing." The plurality assumed that an action taken to remove an alien included detention decisions. But it concluded that the legal question regarding no-bond detention would not "arise from" the actions taken to remove the alien,

9

so this question fell outside the scope of § 1252(b)(9). *Id.* at 292-93 (plurality). The plurality noted that "cramming judicial review of those questions into the review of final removal orders would be absurd" and "[i]nterpreting 'arising from' in this extreme way would also make claims of prolonged detention effectively unreviewable." *Id.* at 293 (plurality); *see also Nasrallah v. Barr*, 590 U.S. 573, 581-83 (2020) ("[F]inal orders of removal encompass only the rulings made by the immigration judge or Board of Immigration Appeals that affect the validity of the final order of removal[.]"); *Torres-Tristan v. Holder*, 656 F.3d 653, 658 (7th Cir. 2011) (concluding a "final order of removal" includes the actual order of removal and "all orders closely related to the deportation proceeding and entered during the proceeding" but not "ancillary determinations made outside the context of a removal proceeding" that are not "intimately associated and immediately associated with the final order" or "governed by the regulations applicable to the deportation proceeding itself, and ordinarily presented to the . . . immigration judge who entered the deportation order") (cleaned up).

The question about the lawfulness of Mr. De Jesús Aguilar's detention and his right to a bond hearing are distinct from the merits of his removability. Though likewise important, they are collateral to the removal process. Accordingly, § 1252(b)(9) does not prevent this court from deciding this habeas petition.

    B.  *Statutory Classification Analysis.*

        1.  *Statutory Overview.*

The main issue thus is whether Mr. De Jesús Aguilar's detention (during his removal proceedings) is governed by § 1225(b)(2)'s mandatory detention provision or § 1226(a)'s

10

detention with the prospect of bond.[2] Section 1225(b)(2) tends to govern the "inspection of other aliens" beyond the scope of § 1225(b)(1), and specific to applicants for admission:

> [I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2). Section 1229a governs general removal proceedings that are available when an alien is "charged with any applicable ground of inadmissibility under section 1182(a) of this title or any applicable ground of deportability under section 1227(a) of this title." 8 U.S.C. § 1229a(a)(2).

Another provision governing pre-removal-order detention is 8 U.S.C. § 1226, governing noncitizens apprehended and detained (so entitled). It says, "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained" while removal proceedings pend. 8 U.S.C. § 1226(a). Section 1226(c) specifies that certain criminal aliens

---

[2] A third statute, § 1225(b)(1), merely provides some helpful context to understanding this series of statutes. Section 1225 (entitled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing") concerns detention of certain noncitizens before a final order of removal. Section 1225(b)(1), which is not at issue here but may lend general understanding, governs the inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled and establishes an expedited removal process. It applies to a noncitizen who (1) "is arriving in the United States" or (2) "has not been admitted or paroled into the United States" and has been physically present in the United States for less than two years. 8 U.S.C. §§ 1225(b)(1)(A)(i), (iii). And it applies only when the noncitizen "is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) of this title." 8 U.S.C. § 1225(b)(1)(A)(i). Section 1182 lists several ways a noncitizen may be inadmissible, but the expedited removal procedure in § 1225(b)(1) singles out two: (1) misrepresentation—fraudulently procuring a visa, other documentation, or admission into the United States or falsely representing himself or herself to be a citizen of the United States— or (2) not possessing the proper documentation needed to be admitted to the United States. 8 U.S.C. §§ 1182(a)(6)(C), (a)(7). For noncitizens falling under these circumstances, the noncitizen is removed immediately, without further hearing or review, unless the noncitizen intends to apply for asylum or indicates a fear of persecution. 8 U.S.C. § 1225(b)(1)(A). If a noncitizen asserts a claim of asylum or a fear of persecution, the statute instructs that the alien "shall be detained" while the claim is being decided. 8 U.S.C. § 1225(b)(1)(B)(ii).

11

are subject to mandatory detention during the removal proceedings; all other aliens falling under § 1226(a) may be released on bond or conditional parole. 8 U.S.C. §§ 1226(a), (c).

2. *Mr. De Jesús Aguilar's Status.*

Mr. De Jesús Aguilar argues that his detention is not authorized by § 1225(b)(2) because this section applies only to interactions at the border whereas he was apprehended within the interior of the United States long after his arrival. He recalls that, under prior ICE practices, he would have been entitled to a bond hearing before an immigration judge because noncitizens like him, who have been apprehended in the interior years after arrival, would have been detained under § 1226(a). *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312-01, 10323 (Mar. 6, 1997) ("Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination."). But, he continues, a recent policy shift announced in *In re Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), funnels all noncitizens who entered without inspection into § 1225 and its mandatory detention scheme, without the possibility for bond or parole. The court retains its independent Article III power to interpret statutes and decide whether an agency has acted within its statutory authority. *See Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024).

The government says, under § 1225(b)(2)'s plain language, Mr. De Jesús Aguilar should be classified as an "applicant for admission" and made subject to mandatory detention. "As with any question of statutory interpretation, [] analysis begins with the plain language of the statute." *Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009). When

12

unambiguously plain, the court must enforce it according to its terms. *See id.* Likewise, the law "normally interprets a statute in accord with the ordinary public meaning of its terms at the time of its enactment. After all, only the words on the page constitute the law adopted by Congress and approved by the President." *Bostock v. Clayton Cnty.*, 590 U.S. 644, 654 (2020). "It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *West Virginia v. Env't Prot. Agency*, 597 U.S. 697, 721 (2022) (citation omitted).

The government cannot be called incorrect at the start in that Mr. De Jesús Aguilar meets the definition of an applicant for admission—defined separately as (1) an alien who is "present in the United States who has not been admitted" or (2) an alien "who arrives in the United States (whether or not at a designated port of arrival . . .)[.]" 8 U.S.C. § 1225(a)(1). He is present in the United States and has not been admitted.

The government would have the court stop there. But this tends to read out of § 1225(b)(2) additional language—whether an alien is "seeking admission." Notably, Congress chose not to reuse the same defined term of art—"applicant for admission"—later in § 1225(b)(2) but chose to introduce another concept undefined by the statutory scheme— an "alien seeking admission." The question is why, and whether the two differently-worded concepts should be interpreted differently—or otherwise put, whether an "alien seeking admission" is merely the same thing as an "alien who is an applicant for admission" or really just a separate caste of aliens deemed applicants for admission.

In looking at the statute as a whole, Mr. De Jesús Aguilar has the better argument. One cannot merely look at "applicant" as necessarily meaning that the alien has sought

13

admission as that term might otherwise presuppose, though in the usual sense an "applicant" usually has sought permission for something. Doing so would break apart the term of art—"applicant for admission"—that has been plainly defined by the statute and gloss the singular word "applicant" with a meaning that Congress expressly never intended. *See Digital Realty Tr., Inc. v. Somers*, 583 U.S. 149, 160 (2018) ("When a statute includes an explicit definition, we must follow that definition, even if it varies from a term's ordinary meaning.") (quotations altered and citation omitted). So "applicant for admission" means, and only means, what Congress says it means.

From there, the government's position would render "alien seeking admission" superfluous—exactly what the court in interpreting the statute should not do. *See Corley v. United States*, 556 U.S. 303, 314 (2009). The government argues that "applicants for admission" include all unadmitted aliens in the United States regardless of their proximity to the border, the length of time they have been present here, or whether they ever had the subjective intent to apply for admission. Insofar as that point goes, that may be true. But it wrestles not with the meaning of an "alien seeking admission." The meaningful-variation canon suggests that Congress injected the phrase "alien seeking admission"—nothing close to just generic words—in a purposeful effort to narrow the scope of the latter part of § 1225(b)(2). *See Wis. Cent. Ltd. v. United States*, 585 U.S. 274, 279 (2018); *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 86 (2017).

Notably, the statute, in introducing "alien seeking admission," avoids the use of a definite article or determiner, such as "the," or "this," or "such," to demonstrate that "alien seeking admission" necessarily means the same thing as applicant for admission; instead, it

14

too refers to "an" alien seeking admission—denoting another category. With rare exception, the law presumes Congress to be lettered and grammatically correct, not the opposite. And even small words have meaning of import. *See Nielsen v. Preap*, 586 U.S. 392, 407-08 (2019) (interpreting "the" in "the alien" in 8 U.S.C. § 1226(c) to be "a function word" that "a following noun or noun equivalent is definite or has been previously specified by context"); *see also United States v. Ketchum*, 201 F.3d 928, 933 (7th Cir. 2000) (the law "does not consider grammar a mere technicality").

In addition, in adopting the government's view, the phrase "seeking admission" could be entirely stricken from the statute without any loss of meaning, and thereby violate the surplusage canon. As written, the statute says as follows:

> [I]n the case of an alien who is an *applicant for admission*, if the examining immigration officer determines that an *alien seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained . . . .

8 U.S.C. § 1225(b)(2)(A) (emphasis added). And as the government reads this statute, striking "seeking admission" would leave the statute saying the very same thing that Congress wrote:

> [I]n the case of an alien who is an *applicant for admission*, if the examining immigration officer determines that an *alien* [] is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained . . ..

8 U.S.C. § 1225(b)(2)(A) (modified). "A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corley*, 556 U.S. at 314 (citation modified). These words cannot be meaningless, else Congress would not have used them. The phrase "seeking admission" must have an independent meaning that identifies precisely which applicants for admission are covered by § 1225(b)(2).

15

The government presents an argument that, under close scrutiny, counters its own position and underscores the court's point. In what the government calls § 1225(b)(2)'s "close neighbor"—that is, § 1225(a)(3)—the government calls out the statute's reference to aliens "who are applicants for admission or otherwise seeking admission[.]" 8 U.S.C. § 1225(a)(3). The government argues that this provision clarifies that those aliens who are applicants for admission are necessarily one-for-one the same as those aliens seeking admission. So, to the government, it would only be natural for Congress to use these synonyms later in § 1225(b)(2). But this actually illustrates the countervailing point—that if Congress merely meant applicants for admission (a statutorily defined term), there was no need to introduce into the statute "or otherwise seeking admission" in § 1225(a)(3), much less "alien seeking admission" in § 1225(b)(2). And the word "otherwise" forcefully echoes this point, because it plainly means in a way other than as previously described. *See Otherwise, adv.*, Oxford English Dictionary sense 1.a (last visited Nov. 25, 2025) ("In another way or ways; in a different manner; by other means; in other words; differently.").

The government raises the interesting argument that, even if "alien seeking admission" means something else, Mr. De Jesús Aguilar is that too—in other words, he is both an applicant for admission and an alien seeking admission such that § 1225(b)(2) would apply regardless of the latter phrase's definition. The government calls "seeking" the present tense (perhaps better said, the present continuous tense) so as to cover Mr. De Jesús Aguilar, who acknowledges that he has a pending I-130 application. *See Seek*, Oxford English Dictionary sense I.7.a (last visited Nov. 25, 2025) ("To try to obtain (something advantageous); to try to bring about or effect . . ."); *see also Shell v. Burlington N. Santa Fe Ry.*

16

*Co.*, 941 F.3d 331, 336 (7th Cir. 2019) (calling "having" a present participle—a "nonfinite verb form ending in -ing and used in verb phrases to signal the progressive aspect").

But this too merely begs the question what "seeking admission" means, and once more tends to destabilize rather than enforce a word that Congress plainly defined within the statutory scheme—this time, the word "admission." The INA defines "admission" as "the *lawful entry* of the alien *into* the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A) (emphases added). "Entry" has long meant the right or act of entering, stressed by the statute's use of "into" the United States, s*ee Entry*, Oxford English Dictionary sense I.3.a (last visited Nov. 25, 2025) ("Opportunity, right, or permission to enter; access . . ."), the same meaning given to it for some time by immigration authorities, *see Matter of Ching and Chen*, 19 I&N Dec. 203, 205 (BIA 1984); *see also Alejandro v. Olson*, 2025 U.S. Dist. LEXIS 201543, 16 (S.D. Ind. Oct. 11, 2025) (Hanlon, J.). One cannot easily call Mr. De Jesús Aguilar seeking—that is, trying to gain—mere entry into the United States when he already has been in this country for 19 years (since 2006). And the government offers the court no reason to believe that an "examining immigration officer" can be found elsewhere than at the border, airport, or other port of entry into the country. 8 U.S.C. § 1225(b)(2); *see also Jennings*, 583 U.S. at 287-89 (distinguishing § 1225 as applying at the Nation's borders and ports of entry and § 1226 as applying to the detention of aliens "already in the country"). If at all, Mr. De Jesús Aguilar would need to be classified by the government under § 1226(a), not § 1225(b)(2), save for one final point to make.

Others have advanced additional arguments for the same interpretation, and indeed a vast swath of federal courts (even if not all) have considered and decided these arguments

17

to reach a consistent result. The court acknowledges the government's point that the IIRIRA seems to have been intended to undo the incongruous result of giving aliens who lawfully appeared at a port of entry for inspection but were deemed inadmissible fewer rights to a bond hearing when those who surreptitiously entered the country without inspection were entitled to request release on bond. An extratextual argument about intent isn't a worry today, nor when Mr. De Jesús Aguilar remains subject to ongoing removal proceedings. And whether Congress has other fixes to the immigration statutory scheme to accomplish is for the representatives of the People to decide, not the court. The court begins and ends today with the statute's plain meaning, for from there it need not take another step.

Whether a 35-year-old man, having lived in this country since 2006, now with his wife and son (both United States citizens), with two convictions to his name (given all their circumstances), recognizing that he has twice been granted bond before in 2013 and 2024, should be considered worthy of release on bond again is a matter for an immigration judge to decide under 8 U.S.C. § 1226(a). *See also* 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1). The court won't inject itself beyond where the law allows.

At the same time, both sides have left the punchline a bit murky. For the petitioner, he argues in part that he should be classified under § 1226(a) and should receive a bond hearing, but his arrest occurred without a warrant such that he doesn't fit squarely within this statute. For the government, it only argues § 1225(b)(2) as a basis for Mr. De Jesús Aguilar's detention, with no backup plan, whether that might include § 1226(a) (arrests with a warrant) or even 8 U.S.C. § 1357(a)(2) (arrests without a warrant). It even alludes to an

argued need for Mr. De Jesús Aguilar to exhaust a "remedy" administratively but without explaining where that is or how that might be done. Its position falls short today.

All this begs the question whether the court should order immediate release or a hearing. The court is uninclined to order a hearing consistent with the procedures under § 1226(a) and give the government a pass for not securing a warrant before Mr. De Jesús Aguilar's arrest, particularly when the government has not asserted this a basis for his continued detention. *See United States v. Sineneng-Smith*, 590 U.S. 371, 375-80 (2020) (party presentation rule). The government seems to concede it acted without a warrant. Perhaps the government could go secure a warrant and rearrest him at or after his release, but to be clear the government must then proceed under § 1226(a).

Likewise, the court is uninclined to order a hearing consistent with the procedures under § 1357 when the government has not proceeded within 48 hours or argued it remains within a reasonable time, much less argued this as basis for his continued detention today or extraordinary circumstances or some likelihood of his escape (perhaps a tough position when he has been in the country for 19 years and twice bonded in immigration proceedings). *See* 8 U.S.C. § 1357(a)(2); 8 C.F.R. § 287.3(d); *Arizona v. United States*, 567 U.S. 387, 408 (2012). The simple matter is this: the government has not established a lawful basis for detention—or, otherwise put, Mr. De Jesús Aguilar has established his detention is today unlawful—and the government must live by the rules that Congress has instituted. The government's failure means that Mr. De Jesús Aguilar should not be detained any longer, all the while removal proceedings continue.

Accordingly, the court GRANTS IN PART the petition for a writ of habeas corpus; ORDERS the respondents to release Javier de Jesús Aguilar immediately from custody under the same conditions that existed before his detention and to certify compliance with this order by a filing a notice with the court by November 26, 2025, and DIRECTS the clerk to email forthwith today a copy of this order to the Warden of the Miami Correctional Facility at the Indiana Department of Correction to secure his release.

SO ORDERED.

November 25, 2025                                         *s/ Damon R. Leichty*
                                                          Judge, United States District Court